240 So.2d 172 (1970)
Charles H. SCHEURER, Appellant,
v.
Mrs. P.Y. TOMBERLIN and Mrs. Helen Adeeb, As Executrices of the Last Will and Testament and Codicil of Dorothy Maynard Scheurer, Deceased, Patricia C. Tehan, As Trustee under Item V of the Last Will and Testament of Dorothy Maynard Scheurer, Deceased, and As Guardian Ad Litem for Michael Patrick Tehan, Daniel Jerome Tehan, Glenn Keith Tehan and Colleen Cecelia Tehan, As the Living Potential Beneficiaries of the Trust under Item V of Said Last Will and Testament, and All Potential Beneficiaries of Such Trust Who May Hereafter Be Born to Harry G. Tehan, III, between the Date of Decedent's Death and the Date the Eldest Child of Harry G. Tehan, III, Attains the Age of Twenty-One Years, and Nancy Scheurer Mahaffy, As Guardian Ad Litem for Anne Telfair Mahaffy and Michael Telfair Mahaffy, and As Guardian Ad Litem for All of Her Children Who May Be Born Hereafter, Appellees.
No. L-455.
District Court of Appeal of Florida, First District.
October 22, 1970.
*173 John Paul Howard, Jacksonville, for appellant.
L. Peter Johnson, of Milam, Ramsay, Martin & Ade, and Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, for appellees.
SPECTOR, Judge.
This appeal brings on for review a judgment of the circuit court construing the last will and testament of Dorothy Maynard Scheurer, deceased wife of appellant. The action was initiated by Mrs. Tomberlin and Mrs. Adeeb as executrices of said will.
The complaint sought construction of "Item V" of the will which provided in part that:
"All of the residue and remainder of my estate, I give, bequeath and devise, In Trust, to my daughter-in-law, Patricia C. Tehan * * * as Trustee * * *.
"(a) My Trustee shall accumulate or pay the income, in such amounts and proportions as she may deem proper, to or for the benefit of those of my presently-living grandchildren who survive me, and such additional grandchildren who may be born between the date of this Will and the date the eldest grandchild attains the age of twenty-one (21) years, * * *"
The complaint alleged that a construction of the will was necessary because the decedent had no children of her body or by legal adoption and consequently there were no known grandchildren. The lack of grandchildren related to the testatrix by blood is admitted by all parties to this cause. The executrices further alleged that it was the intent of the testatrix that the beneficiaries of the trust created by Item V of the will be the children of Harry G. Tehan, III, and Patricia C. Tehan, the named trustee.
The complaint named three categories of defendants, viz: (1) Patricia C. Tehan, as trustee for her minor children, Michael Patrick, Daniel Jerome, Glenn Keith and Colleen Cecelia, (these defendants are referred to as the Tehans); (2) Anne Telfair Mahaffy and Michael Telfair Mahaffy, minor children of Nancy Scheurer Mahaffy, (these defendants are referred to as the Mahaffys); and (3) Charles H. Scheurer, the surviving husband of the decedent. By their answer the Tehans agreed with the executrices that they (the minor children) are the persons referred to as "grandchildren" in decedent's will and therefore should be declared to be the beneficiaries of the subject trust. The Mahaffy's *174 answer contended that they were the "grandchildren" intended as the beneficiaries of the subject trust, or, in the alternative, that they were "grandchildren" along with the Tehans and were thus also beneficiaries of the subject trust. The answer of defendant, Charles H. Scheurer, denied that the decedent had any grandchildren at all and therefore prayed for a determination that the subject trust is invalid and void so that he as the sole surviving heir at law would be entitled to the corpus of the trust attempted to be created by Item V of the will.
At the close of the pleadings, the court below ordered a trial of the factual issues raised by the pleadings. The evidence adduced sustained the court's findings that the decedent, Dorothy Maynard Scheurer, died August 23, 1967, leaving a will dated March 17, 1966, and a codicil executed thereafter which is not material here. The will contained the provision recited in the forepart of this opinion which created the testamentary trust underlying this litigation and described as Item V in the will. The decedent was survived by her husband, the appellant, Charles H. Scheurer, who is decedent's sole heir at law. The court found that decedent never had a child and left no "grandchildren" as survivors. In 1946, decedent married one Harry G. Tehan, Jr., who had a 12-year-old son from a previous marriage, Harry G. Tehan, III. This son was a member of the household of his father and the decedent until the time of the son's own marriage to Patricia C. Tehan in 1958. The court found that decedent referred to and regarded Harry G. Tehan, III, as her son. His wife, Patricia, was likewise referred to and regarded as decedent's daughter-in-law. The four children begat by Harry and Patricia Tehan were referred to and regarded by decedent as her grandchildren. A review of the evidence leaves no doubt that decedent looked upon the Tehan children as her grandchildren.
In 1962, the decedent and Harry G. Tehan, Jr., were divorced and the following year she married appellant, Charles H. Scheurer. Mr. Scheurer had grandchildren related to him by blood through his daughter, Nancy Scheurer Mahaffy. The court below expressly found that there was no family relationship or visitations between the Scheurer grandchildren and the decedent. The record also reveals that Nancy's mother had instructed her not to have anything to do with decedent after her marriage to Nancy's father. The court found that the decedent did not refer to and did not regard the Mahaffy children as her grandchildren.
Based upon the foregoing findings, the court held that the residuary trust provided in Item V of the will is a valid and effective trust and, further, that the Tehan children together with any child born to Harry G. Tehan, III, prior to Michael Patrick Tehan becoming 21 years of age are the "grandchildren" referred to in the will and codicil of the decedent. Accordingly, the court ruled that the said grandchildren are the beneficiaries of and the only persons entitled to share in the residuary trust in question.
Appellant, Charles H. Scheurer, contends that the trial court erred in its holding that there was a latent ambiguity in the will which necessitated the taking of extrinsic evidence to determine what the testatrix contended by the reference to grandchildren in her will. In fine, appellant Scheurer's contention is that since there were no grandchildren in fact, the trust must fail and consequently the corpus passes to him as sole surviving heir. In Re Estate of Guess, 213 So.2d 638 (Fla.App. 1968). In contrast, the Mahaffy appellees cross assign as error the trial court's finding that they were not included as grandchildren within the will.
Appellant ably argues the general rules of interpretation applicable to the language used in a will and cites numerous authorities for the proposition that the courts cannot resort to extrinsic evidence to limit or expand upon the language of a will, particularly where the words used are words *175 of art and have a precise legal meaning which are selected with discrimination and deliberation. Appellant forcefully argues that that intent must be garnered from the language found within the provisions of the will, In Re Marks' Estate, 102 So.2d 301 (Fla.App. 1958), and therefore there was no authority for the trial court to determine who the testatrix meant by the term "grandchildren".
Appellant's contention that there was no ambiguity is without merit. The trial court correctly held that the absence of actual grandchildren in the face of a bequest for the benefit of presently living grandchildren pointed to the existence of a latent ambiguity in the will and that under such circumstances evidence was admissible to show the persons to whom the decedent made reference. We think the controlling law in these circumstances is well stated in 95 C.J.S. Wills § 636, page 920, as follows:
"A latent ambiguity is where the words of a written instrument are plain and intelligible, but by reason of extraneous facts, the certain and definite application of those words is found impracticable. * * * Latent ambiguities may be either cases of equivocation or misnomer and misdescription. It is one which does not appear on the face of the words used, and it is not known to exist until the words are brought in contact with the collateral facts. A latent ambiguity in a will does not arise from the words themselves, but from extrinsic circumstances to which the words refer and which may be explained by development of extraneous facts without altering or adding to the written language. It is one which arises from some collateral circumstance, or extrinsic matter, where the instrument itself is sufficiently certain and intelligible, or when the words used are neither ambiguous nor obscure but ambiguity appears with respect to persons or things meant. * * * A latent ambiguity exists * * * where the language of the instrument does not lack certainty but some extrinsic or collateral matter outside the will renders the meaning obscure and uncertain."
The law of this jurisdiction as set forth by the authors in 35 Fla.Jur., Wills, Section 253, is wholly consistent with the above excerpt from C.J.S., viz:
"A court may, in proper case, look beyond the face of a will if there is an ambiguity as to the person to whom it is applicable; if there is a latent ambiguity as to the identity of a legatee or devisee, or a mere inaccuracy in the designation or description contained in the will, extrinsic evidence is admissible to explain the ambiguity or inaccuracy and identify the person designated. Thus, parol evidence is admissible to explain the meaning of a description of a beneficiary named in a will that might apply to each of several persons, or to rectify a mistake made in the description of a beneficiary."
The will in the case at bar clearly contained a latent ambiguity by reason of the testatrix's use of the word grandchildren when in fact she had none. Certainly she must have been referring to existing persons as indicated by the use of the phrase "to or for the benefit of those of my presently living grandchildren". The use of the word presently negates any notion that the testatrix contemplated creating the trust only if she should have grandchildren related to her by blood or adoption in the future.
An analogous factual situation was considered by the court of a sister state in Coon v. McNelly, 254 Ill. 39, 98 N.E. 218 (1912). There the testator had devised his residuary estate "to my grandchildren". The testator had no actual children but had several stepchildren by a wife who had predeceased him. There, as here, the testator referred to the stepchildren as his "children" and their children as his "grandchildren" at all times subsequent to his marriage. In holding that extrinsic evidence was admissible to show what the testator *176 meant by "my grandchildren", the court stated:
"In construing wills, the paramount rule is to ascertain the intention of the testator, and give it effect, if not prohibited by law. * * * In seeking this intention, the relation of the parties, the nature and situation of the subject-matter, the purpose of the instrument, and the motives which might reasonably be supposed to influence the testator in the disposition of his property may be considered. * * * The rule as to the exclusion of evidence offered to explain written instruments does not exclude the circumstances in which testator was placed, or the collateral facts surrounding him, at the time the will was executed. * * *
"For the purpose of determining the object of a testator's bounty, a court may inquire into every material fact relating to the person who claims to be interested under the will, in order to identify the person intended by the testator as a legatee."
A similar ruling was made by the court in In Re Whittmer's Estate, 151 Pa.Super. 274, 30 A.2d 197 (1943), involving a bequest of the residuary estate "to my nephews and nieces" when in fact the testator had no nephews and nieces related to him by blood, but customarily referred to the nephews and nieces of his deceased wife as his. A latent ambiguity was found to exist so as to require the admission of extrinsic testimony as to the identity of the intended beneficiaries. In so holding, the court stated:
"We think the lower court was wrong in awarding the entire residuary estate to Blanche Shuman. Testator had no nephews and nieces of his blood. * * * No subjects existed which would satisfy the will except the nephews and nieces of his wife. Testator `by courtesy' * * * referred to the nephews and nieces of his deceased wife as his. And since there is a latent ambiguity the proffered testimony was admissible, dehors the codicil, to identify them as the intended beneficiaries."
Having correctly concluded that a latent ambiguity existed in the will of the testatrix, the court properly proceeded to take testimony to determine the identity of those whom the testatrix desired to benefit from the bequest. No useful purpose would be served to recount in detail the evidence presented to the trial court to show that the testatrix considered the Tehan children as her grandchildren. Sufficeth to say that the evidence was overwhelming. By like token, the evidence concerning the relationship between the testatrix and the Mahaffy children was sufficient to support the trial court's finding that the testatrix did not consider them as her grandchildren.
The judgment appealed herein is accordingly affirmed.
CARROLL, DONALD K., Acting C.J., and WIGGINTON, J., concur.